*Court Of Appeals*
*Fourth Court of Appeals District of Texas
San Antonio*

★ ★ ★ ★ ★ ★

**OPINION**

No. 04-08-00286-CR

Brady Lee **BURNS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 9, Bexar County, Texas
Trial Court No. 985433
Honorable Laura Salinas, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:    Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed:  August 5, 2009

AFFIRMED

Brady Lee Burns was convicted of driving while intoxicated and punishment was assessed at 180 days confinement, probated for eighteen months, and a $1,000 fine.  Burns raises two issues, arguing the trial court erred in allowing evidence of retrograde extrapolation before the jury.  We affirm the trial court's judgment.

### BACKGROUND

Bexar County Deputy Sheriff Forest Horecka testified that at approximately 1:40 a.m. on October 15, 2006, he was dispatched to look for a possible intoxicated driver on Highway 87. Approximately five minutes later, he saw a pickup truck driving on the improved shoulder of the highway. Because the truck did not match the description provided by the dispatcher, Deputy Horecka continued to look for the described vehicle for approximately thirty seconds. When he saw no other vehicle, Deputy Horecka returned his attention to the truck and followed it. He saw the driver make an illegal wide turn onto a road, decided to stop the driver, and activated his emergency lights. When he initially contacted the driver, Deputy Horecka was struck by a strong odor of an alcoholic beverage coming from inside the vehicle. Deputy Horecka determined there were two people inside the truck – Burns, who was driving, and the passenger, who owned the vehicle. Both men admitted they had been drinking, and the deputy noticed Burns's speech was "very slurred." Deputy Horecka asked Burns to get out of the truck and administered a series of field sobriety tests. The deputy testified Burns performed poorly on each of the tests, and he concluded Burns was intoxicated. The State also placed into evidence a videotape showing Burns performing the field sobriety tests. When the tape was played for the jury, Deputy Horecka pointed out the parts of the tests that led him to conclude Burns was intoxicated. Deputy Horecka admitted that to the untrained person, Burns may not have appeared intoxicated, but testified he believed "one-hundred percent" Burns was intoxicated.

Burns later consented to a breath test, which was administered approximately seventy-five minutes after he was stopped by the deputy. The test results showing a blood alcohol content of .116 and .113 were admitted into evidence. George Allen McDougall, the Breath Test Technical

Supervisor for Bexar County and the State's expert, testified about the scientific theory underlying the breath test machine used in this case and interpreted the test results for the jury. McDougall told the jury that based on the test results, Burns had an alcohol concentration of either .116 or .113 grams of alcohol in 210 liters of his breath. This amount was above the "legal level of intoxication" in Texas, which is .080, and that "for purposes of driving," a person with that concentration of alcohol would not have the normal use of his mental or physical faculties.

McDougall also testified about the underlying scientific theories and studies concerning retrograde extrapolation.[1] He explained that a person "normally" has an alcohol elimination rate of .018 per hour, but he admitted he had no idea as to Burns's elimination rate. McDougall also testified that based on at least two published studies and his own experience, he believed ninety percent of the drinking drivers would be in the elimination phase while driving, and ten percent of the same population would be in the absorption phase. Although requested by the State to provide a range for the possible "alcohol levels" of a person who tested at a .116 seventy-five minutes after driving, McDougall failed to give a specific number range, but simply repeated that there was a "ten percent chance that he's rising at the time that he's tested, and there's a ninety percent chance that he's coming down." McDougall further testified that if such a person was in the absorption phase, the absorption rate would be no more than 0.010 per hour. However, McDougall also told the jury he could not opine about Burns's blood alcohol concentration at the time of driving because he knew nothing of the individual characteristics and facts necessary to express that opinion. The blood alcohol concentration could have been higher, lower, or the same as the results of the breath test

---

[1] "Retrograde extrapolation is the computation back in time of the blood-alcohol level – that is, the estimation of the level at the time of driving based on a test result from some later time." *Mata v. State*, 46 S.W.3d 902, 908-09 (Tex. Crim. App. 2001) (citing Lawrence Taylor, DRUNK DRIVING DEFENSE § 5.2 (5th ed.) (2000)).

administered some seventy-five minutes after arrest. He also testified he did not know if Burns was in the absorption phase or elimination phase of the blood alcohol curve.

The trial court instructed the jury it could return a guilty verdict if it found Burns had an "alcohol concentration of 0.08 or more," or had lost the "normal used of his physical or mental faculties." The jury found Burns guilty and he perfected this appeal.

### RETROGRADE EXTRAPOLATION

In his first issue, Burns asserts the trial court erred in "[a]llowing [McDougall] to conduct retrograde extrapolation . . . in violation of the *Kelly/Robinson*[2] standard and in violation of *Mata* . . . ." He argues McDougall's testimony about retrograde extrapolation was not properly applied because "the possible range of Appellant's blood alcohol content results back to the time of driving . . . did not specifically apply to Appellant." Burns appears to argue that because McDougall based his testimony on the two studies relating to a general population of drinking drivers rather than Burn's individual characteristics and the facts of the case, McDougall's testimony was unreliable.

### *Applicable Law*

We review the trial court's decision to admit scientific evidence under an abuse of discretion standard. *Mata*, 46 S.W.3d at 909. "[I]t is the responsibility of the trial court to determine whether the scientific evidence offered is sufficiently reliable, as well as relevant, to help the jury in reaching accurate results." *Id.*

In *Mata*, the court of criminal appeals considered whether the trial court erred in allowing McDougall, the same expert used by the State in this case, to express an opinion as to the possible range of Mata's blood alcohol concentration at the time of driving by applying retrograde

---

[2] *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995).

extrapolation. 46 S.W.3d at 904-06. The court of criminal appeals held the State failed to prove by clear and convincing evidence that McDougall's testimony was reliable. *Id.* at 917. The court suggested the trial court should look to several individual characteristics of the alleged drunk driver in considering the reliability of a witness's retrograde extrapolation. *Id.* at 916-17. Those characteristics include the driver's weight, gender, typical drinking pattern, tolerance for alcohol, the quantity and type of alcohol consumed, the time period when the alcohol was consumed, the time of the last drink, and whether the driver consumed any food before, during, or after drinking and the type of food consumed.[3] *Id.* at 916.

The court reiterated its prior holding that to establish reliability of the expert's opinion, the State was required to demonstrate by clear and convincing evidence the scientific evidence at issue was properly applied to the defendant. *Id.* at 908 (citing *Kelly*, 824 S.W.2d at 573). More specifically, it made clear that any retrograde extrapolation was not reliable unless it was based on sufficient characteristics of the defendant on trial. *Mata*, 46 S.W.3d at 916-17. Absent sufficient knowledge of those facts, or other means of replacing those factors, no reliable retrograde extrapolation is possible. *Id.* For example, if there is a single test administered within a reasonable time[4] of arrest, then the expert must know "many" of the *Mata* factors. *Id.* at 916. "[A] single test conducted some time after the offense could result in a reliable extrapolation only if the expert had knowledge of many personal characteristics and behaviors of the defendant." *Id.* On the other hand, "[i]f the State had more than one test, each test a reasonable length of time apart, and the first test were conducted within a reasonable time from the time of the offense, then an expert could

---

[3] For convenience, we refer to these individual characteristics as the "*Mata* factors."

[4] In *Mata*, where the breath test was administered over two hours after the offense, the court stated the delay was "significant" and "seriously affects the reliability of any extrapolation." *Id.* at 917.

potentially create a reliable estimate of the defendant's [alcohol concentration] with limited knowledge of personal characteristics and behaviors." *Id.*; *see also Bigon v. State*, 252 S.W.3d 360, 368 (Tex. Crim. App. 2008) (holding that retrograde extrapolation testimony was reliable even though expert based his opinion in part on assumption that defendant was in elimination because there were two blood tests approximately one and one-half hours apart and expert met other *Mata* conditions). "Somewhere in the middle might fall a case in which there was a single test a reasonable length of time from the driving, and two or three personal characteristics of the defendant were known to the expert." *Mata*, 46 S.W.3d at 916-17.

*Discussion*

Initially, we must determine whether *Mata* applies in this case. The State argues no *Mata* analysis is warranted because McDougall never testified before the jury to a specific alcohol concentration range. Rather, McDougall testified only in very broad terms as to the results of two studies indicating that ninety percent of the drivers found operating a motor vehicle after drinking were in the elimination phase of the alcohol absorption curve while driving and ten percent were in the absorption phase. McDougall also testified that if a driver was in the absorption phase, his rate of absorption would be .01 per hour. The State contends this testimony does not amount to the type of retrograde extrapolation testimony discussed in *Mata*. We disagree.

When the State asked McDougall to provide a range of "alcohol levels" based on a hypothetical question that incorporated the facts of this case, McDougall told the jury there was a "ten percent chance that he's rising at the time that he's tested, and there's a ninety percent chance that he's coming down." This testimony told the jury two things. First, and requiring no mathematical calculations by the jury, there was a ninety percent chance Burns's was in the

elimination phase at the time of the test, making his alcohol level higher than .113 at the time of driving. Second, and requiring nothing more than the application of a simple mathematical calculation by the jury, even if Burns was in the absorption phase at the time of the breath test, given an absorption rate of .01 per hour, Burns's alcohol level would have been no lower than roughly .10 at the time of driving.[5] In essence, McDougall testified Burns's alcohol concentration would have been no lower than .10 at the time of driving. We hold this testimony must be evaluated within the requirements of *Mata*. *See Douthitt v. State*, 127 S.W.3d 327 (Tex. App.—Austin 2004, no pet.) (appeals court used *Mata* to determine whether trial court erred in permitting expert to testify that defendant's alcohol concentration would have been "at least .13 or greater" rather than expressing any range of numbers); *Blumenstetter v. State*, 135 S.W.3d 234 (Tex. App.—Texarkana 2004, no pet.) (appeals court used *Mata* factors to determine whether trial counsel rendered ineffective assistance when he failed to object to expert's testimony that there was "no scenario" in which defendant's alcohol concentration would not have been "above .08 at the time of the accident.").

Having determined *Mata* applies to our analysis, we turn to whether McDougall's testimony was properly admitted. McDougall admitted he knew none of the individual characteristics and facts necessary to express an opinion as to any range of alcohol concentration for Burns, and opined that at the time of his arrest, Burns' alcohol concentration could have been higher, lower, or the same as indicated by the breath test. He also testified he did not know whether Burns was in the elimination or absorption phase at the time of his arrest. Because the State's witness conceded and admitted he knew none of the factors required by *Mata* when only a single test is available, the trial court abused its discretion in admitting the testimony.

---

[5] Using the lower figure of .113, and seventy-five minutes equates to one and one-quarter hours or 1.25 hours, .113 - .0125 = .1005

## RELEVANCY

Before we turn to the issue of harm, we address Burns's second issue in which he argues the evidence of retrograde extrapolation was not relevant, or if relevant, the probative value of the evidence was greatly outweighed by its prejudicial effect upon the jury. Having found the testimony to be unreliable, we also find the testimony was irrelevant and its probative value was greatly outweighed by its prejudicial effect. *See Acevedo v. State*, 255 S.W.3d 162, 169-70 (Tex. App.—San Antonio 2008, pet. ref'd) (holding expert's testimony was inadmissible because it was unreliable and irrelevant); *Salazar v. State*, 127 S.W.3d 355, 360 (Tex. App.—Houston [14th Dist.] 2004, pets. ref'd) (holding expert testimony must be reliable and relevant to be admissible); *see also Ruffin v. State*, 270 S.W.3d 586, 595 (Tex. Crim. App. 2008) (stating expert's testimony should be excluded under Rule 403 if it is "insufficiently relevant or reliable under our state's guidelines for expert testimony."); *Mata*, 46 S.W.3d at 908 (noting that Rule 702 involves "dual inquiry of relevance and reliability.").

## HARM ANALYSIS

The erroneous admission of retrograde extrapolation testimony is non-constitutional error. *Bagheri v. State*, 119 S.W.3d 755, 762-63 (Tex. Crim. App. 2003). Likewise, evidence admitted in violation of Rule 403 is non-constitutional error. *Williams v. State*, 27 S.W.3d 599, 603 (Tex. App.—Waco 2000, pet. ref'd). We therefore reverse only if the error in this case affected Burns's substantial rights. *See* TEX. R. APP. P. 44.2(b). Stated another way, we must affirm the trial court's judgment "if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but slight effect." *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008). The issue is not whether there is sufficient evidence to support the verdict. *Motilla v.*

*State*, 78 S.W.3d 352, 356 (Tex. Crim. App. 2002). Rather, the court should consider the entire record, jury instructions, jury argument, and even voir dire, if applicable. *Id*. at 355-56. "Important factors are 'the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case.' More specifically, the reviewing court should consider whether the State emphasized the error, whether the erroneously admitted evidence was cumulative, and whether it was elicited from an expert." *Bagheri*, 119 S.W.3d at 763 (internal citations omitted).

Relying on *Bagheri* and *Owens v. State*, 135 S.W.3d 302 (Tex. App.—Houston [14th Dist.] 2004, no pet.), Burns contends McDougall's testimony had more than a slight effect on the jury. In *Bagheri*, the State conceded the testimony regarding retrograde extrapolation should not have been placed before the jury. *Id*. at 760. Using the analytical structure described above, the court of criminal appeals concluded Bagheri was harmed and affirmed this court's reversal of the conviction. *Id*. at 762-64. In doing so, the court of criminal appeals reasoned harm was evident because the testimony was elicited from an expert, throughout the trial the State emphasized it would present scientific evidence from an expert demonstrating the alcohol concentration was over the legal limit at the time of driving, and in closing argument emphasized McDougall "studied with the leading experts in the field" and his calculations were based on "scientifically reliable, valid evidence." *Id*. at 763. After examining the remaining evidence, the court concluded the retrograde extrapolation testimony was not cumulative and rejected the State's suggestion that there was overwhelming evidence of the defendant's guilt. *Id*. at 764. The court noted Bagheri presented an alternate explanation[6] for his poor performance on the field sobriety tests. *Id*. The court also referred to the

---

[6] Bagheri and another witness testified that the defendant was fatigued from working. *Id*. Burns did not present any defense witnesses.

fact that on voir dire, several jurors expressed the opinion that a subject's alcohol content would always be higher at the time of driving. The court noted the jurors' statements were an indication of the "powerful persuasive effect that 'scientific' evidence has on the average juror." *Id*.

In *Owens*, the Fourteenth Court of Appeals concluded the appellant was harmed by the erroneous admission of retrograde extrapolation testimony. *Owens*, 135 S.W.3d at 312. However, in reaching its conclusion, the court noted the State highlighted the expert's credentials, urged the jury to rely on the expert's opinion, the expert testified with certainty that the appellant was "legally intoxicated" at a level of nearly twice the legal limit, and based on hypothetical questions, could not envision a scenario where the appellant was not over .08. *Id*. at 311. The State also emphasized the expert's testimony during its closing argument. *Id*.

In contrast, the Austin Court of Appeals in *Douthitt* found the appellant was not harmed by the improper admission of retrograde extrapolation testimony. *See Douthitt*,127 S.W.3d at 338. In that case, the court noted that unlike *Bagheri*, none of the venire members expressed an opinion on the subject of alcohol concentration, the prosecutor did not mention retrograde extrapolation during his opening statement, and the expert's testimony was cumulative "in the sense that there was other significant evidence" of intoxication. *Id*. Such evidence included testimony that Douthitt shared a 1.75 liter bottle of Jack Daniels Down Home Punch and at least a twelve-pack of beer with two companions on the day of his arrest. *Id*. The court concluded:

> In summary, the retrograde extrapolation testimony in this cause was elicited from an expert, but there is no indication that the jurors were predisposed to give such testimony greater weight than the other evidence before them. The retrograde extrapolation testimony was cumulative of other evidence of intoxication and was not given special emphasis by the State. Although the prosecutor did remind the jurors of [the expert's] testimony during his arguments, he did not claim special expertise for [the expert] or suggest that his testimony was alone sufficient to convict. *Cf. Bagheri II*, 119 S.W.3d at 763. Given the strength of the State's case and the relative

weakness of appellant's defensive theories, we can state with fair assurance that the erroneous admission of the retrograde extrapolation testimony had, at most, a slight effect on the jury. We therefore conclude that the error should be disregarded.

*Id*. at 339.

The facts of the present case are distinguishable from those in *Bagheri* and *Owens*, and are closer to those in *Douthitt*. The common thread in *Bagheri* and *Owens* was the State's emphasis of the expert's credentials and the reliability of the retrograde extrapolation testimony. That emphasis is lacking in this case. Neither the State nor Burns mentioned the issue of retrograde extrapolation during voir dire or in their respective opening statements. In his closing, Burns twice referenced McDougall's testimony about retrograde extrapolation. Burns first argued:

> Point 08: Mr. McDougall, their expert, relies primarily on two studies, and two studies alone, and one of the studies he relied on is by a guy named Gullberg, and Gullberg's [sic] even done other studies that Mr. McDougall, I guess, apparently, isn't that familiar with. And I tried to do the best job that I could to talk about the studies; you know.

He then argued McDougall's credibility should be questioned because he was paid by the county and not likely to admit shortcomings in the Intoxilyzer 5000. A short time later Burns argued:

> And the officer – McDougall – we talked a little bit about extrapolation. Extrapolation is going back in time to figure out what his blood alcohol level was at the time of driving. And they can do that. There are studies that have done that. And the officer has questions that were preprinted in his report to get those things.[7]
>
> And I'm not beating up on the officer. I mean, I like law enforcement.

Burns continued his argument by telling the jury that the legislature could have easily defined driving while intoxicated to include driving after ingesting any amount of alcohol but it had not done so.

---

[7] During his testimony, Deputy Horecka admitted he did not ask any questions printed on the DWI report designed to discover facts that could be used to conduct a retrograde extrapolation. He stated he failed to ask the questions because he did not realize their importance.

The State referenced McDougall's testimony only once in closing argument. After discussing the testimony about Burns's performance on the field sobriety tests, the State turned its attention to the breath test.

> But on top of all that evidence – it doesn't stop there – the defendant gave a breath sample. He blew a .116 over .113. The legal limit is .08 or more. So here is your .08 or more. Way more.

> And you heard from Mr. McDougall that 90 percent – 90 percent of the population is coming down at the time of the test. He was a .116 over .113 at the time that he took his test an hour and 15 minutes after the stop.

The State then closed by asking the jury to return a guilty verdict based "on all this evidence."

We hold McDougall's retrograde extrapolation testimony had but slight effect upon the jury. Although the testimony came from an expert and was not cumulative of other evidence, the State did not emphasize McDougall's status as an expert nor subscribe special credibility to his testimony. Moreover, there was other persuasive evidence supporting the jury's verdict: (1) the results of the field sobriety tests, (2) testimony of Burns's poor driving skills, including the making of an improper turn and stopping partially on the roadway, (3) the results of a breath test administered relatively soon after the arrest, (4) the deputy's observations that Burns had very slurred speech and the odor of intoxicants on his breath, (5) Burns's admission that he consumed alcoholic beverages, and (6) the deputy's testimony that he was "100 percent sure" Burns was intoxicated.

## CONCLUSION

The judgment of the trial court is affirmed.

Steven C. Hilbig, Justice

PUBLISH