

## Fourth Court of Appeals
### San Antonio, Texas

**CONCURRING OPINION**

No. 04-21-00258-CR

Aaron Dominique **TRAYLOR**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-CR-6163
Honorable Melisa C. Skinner, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice
Concurring Opinion by: Irene Rios, Justice

Sitting:       Patricia O. Alvarez, Justice
               Luz Elena D. Chapa, Justice
               Irene Rios, Justice

Delivered and Filed: August 31, 2022

I concur with the majority's conclusion that any alleged error in this case was harmless. Because the alleged error was clearly harmless, I would forego the Rule 403 and Rule 609 analysis, assume without deciding the trial court erred, and instead address harm. I write separately to explain in more detail why I think the error was clearly harmless.

"[E]vidence admitted in violation of Rule 403 [of the Texas Rules of Evidence] is non-constitutional error." *Burns v. State*, 298 S.W.3d 697, 703 (Tex. App.—San Antonio 2009, pet. ref'd). "Such an error must be disregarded if it 'does not affect substantial rights.'" *Macedo v.*

*State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021) (quoting TEX. R. APP. P. 44.2(b)). "An error does not affect substantial rights if the [reviewing] court has a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect." *Macedo*, 629 S.W.3d at 240 (internal quotation marks omitted). "In deciding that question, we consider: (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence supporting the verdict; and (4) whether the State emphasized the error." *Id.* "Overwhelming evidence of guilt is a factor in any thorough harm analysis." *See Magana v. State*, 351 S.W.3d 501, 506 (Tex. App.—San Antonio 2011, pet. ref'd).

Here, Traylor was charged with aggravated robbery for robbing a convenience store using a firearm. The store clerk testified she arrived at work at 7:30 a.m. to ensure everything was in place and the glass counter—that separates the store clerk from customers—was wiped clean before she opened the store at 8:00 a.m. She testified that a man entered the store at approximately 8:25 a.m. She saw him "charg[e] to the side [of the counter], come around [the counter,] and point[] a gun at [her]." She opened the register as the perpetrator pressed the gun to her temple and asked where the rest of the money was. After she gave him money from the register, she explained the perpetrator then "just turned around, jumped over the counter, and left."

The evidence at trial showed that officers from the San Antonio Police Department ("SAPD") obtained surveillance footage of the aggravated robbery. The surveillance video was admitted into evidence and played for the jury. In the surveillance video, the perpetrator could be seen placing his hand on the glass counter when he jumped over it and left the store.[1] Detective Eric Roberson, a crime scene investigator with SAPD, testified he was able to lift a latent palm

---

[1] While the store clerk testified two customers came into the store before the perpetrator, she stated that neither customer touched the glass counter.

print from the glass counter where the perpetrator placed his hand. Maria Acuna-Rhodes, a latent print examiner for SAPD with twenty-one years' experience, testified she submitted the palm print from the crime scene into the Automated Fingerprint Identification System ("AFIS") and the system identified an individual whose prints matched the prints pulled from the crime scene. Acuna-Rhodes further testified she compared the print from the crime scene with the AFIS match and stated she was "100 percent certain" the two prints were from the same person. Detective James Medrano testified Acuna-Rhodes informed him that the print from the crime scene matched Traylor's prints in the AFIS.

Following the AFIS match, Detective Robert Valadez testified he was provided a picture and residential address for Traylor. Detective Valadez stated the address was near the convenience store that was robbed and in the direction that the perpetrator fled after the robbery. Detective Valadez observed the residence and identified Traylor as the individual at the residence. Detective Valadez further testified that Traylor matched: (1) a photo of the individual associated with the AFIS prints; (2) the description of the perpetrator provided by the store clerk; and (3) the perpetrator depicted in the surveillance video.

Pursuant to a search warrant, Detective Orlando Torres searched Traylor's home and located a wig, gold-rimmed glasses, and a black hoodie matching those articles worn by the perpetrator during the robbery. Detective Torres also located bullets and the handle of a handgun in Traylor's home.[2] Pictures of the wig, gold-rimmed glasses, black hoodie, bullets, and handgun handle were admitted into evidence. The store clerk testified that she identified the defendant in a photo line-up. When the photos were shuffled, the store clerk identified the defendant a second time.

---

[2] The surveillance video shows that the firearm used by the perpetrator was a handgun.

Assuming the trial court erred when it overruled Traylor's 403 objection to testimony elicited from Traylor regarding three previous convictions for aggravated robbery, the prosecutor elicited the testimony for impeachment purposes only and did not elicit the underlying details of the aggravated robbery convictions. Instead, the prosecutor asked Traylor what crimes he had previously been convicted of, to which Traylor responded, "Aggravated robbery." "Whenever the extraneous offense is similar to the charged offense, there is always a potential that the jury may be unfairly prejudiced by the defendant's character conformity." *Beam v. State*, 447 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2014, no pet.). While the jury might have been inclined to consider this testimony as evidence supporting the State's theory, the trial court's limiting instruction expressly told the jury they may consider the testimony for the purpose of aiding the jury in assessing "the credibility of [Traylor] as a witness in his own behalf and [in considering] the weight to be given his testimony." *See id.* (holding impermissible inferences from an extraneous offense can be minimized through a limiting instruction). The jury was further admonished that it may not consider the testimony for any other purpose. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) ("We generally presume the jury follows the trial court's instructions in the manner presented.").

In light of the overwhelming evidence supporting the jury's guilty verdict, Traylor's very brief testimony that he was previously convicted of aggravated robbery is relatively insignificant. *See Macedo*, 629 S.W.3d at 241 (holding error in admitting relatively insignificant evidence was harmless); *see also Magana*, 351 S.W.3d at 506 (holding overwhelming evidence of guilt is a factor to be considered in a thorough harm analysis). Further, as the majority points out, the State did not emphasize the error when the testimony was elicited or during jury argument. Under these circumstances, and considering the trial court's limiting instruction, there is a fair assurance from

an examination of the record as a whole, that Traylor's testimony—that he had been previously convicted of aggravated robbery—did not influence the jury or had only a slight effect.

I would assume without deciding the trial court erred and only address whether the error was harmless. *See Baez v. State*, 486 S.W.3d 592, 601 (Tex. App.—San Antonio 2015, pet. ref'd) (assuming without deciding error because the appellant was unable to show harm); *see also Magana*, 351 S.W.3d at 506. For the foregoing reasons, I respectfully concur in the judgment.

Irene Rios, Justice

PUBLISH