Submitted on record and briefs February 12, affirmed May 23, 1990

STATE OF OREGON,
*Respondent,*

*v.*

DAVID JAMES CALHOUN,
*Appellant.*

(TC8812557; CA A61140)

792 P2d 1223

William J. Hedges and Hedges & Mitchell, Oregon City, filed the brief for appellant.

Dave Frohnmayer, Attorney General, Virginia L. Linder,

Solicitor General, and Vera Langer, Assistant Attorney General, Salem, filed the brief for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

## DEITS, J.

Defendant appeals his conviction for driving under the influence of intoxicants. ORS 813.010. He assigns as error the trial court's denial of his motions to suppress and to reopen his case to allow further testimony. We affirm.

In August, 1988, at about 3 a.m., Deputy Sheriff Beckwith was patrolling a local park. As he was checking out another vehicle in the park, he saw defendant's truck go by with a single occupant. About ten minutes later, on his way out of the park, he saw defendant's truck parked in a large parking area of the park with its engine and lights off. He noticed that there was a person in the car whose head was "bobbing." Beckwith stopped his marked police car about 30 feet behind the truck and went on foot to investigate. He left the patrol car's headlights and spotlight on, but did not turn on his overhead lights. He was unable to get defendant's attention, so he knocked on the car window. When defendant rolled down the window, Beckwith smelled a strong odor of alcohol and saw that defendant's eyes were watery and blood-shot. He then asked defendant for a driver's license. Defendant's speech was slurred, and he had a hard time finding his license. He finally found it and held it up for Beckwith, but refused to surrender it. Beckwith then went back to his car to get a notebook to write down the license information. When he came back, he noticed that the car keys that had been on the front seat were gone. He again asked defendant for his driver's license, and defendant told him that he had not been driving.

Defendant argues that the trial court erred in denying his motion to suppress all evidence arising out of the encounter with Beckwith. He contends that the initial encounter was a "stop" and, at that time, Beckwith did not have a reasonable suspicion that defendant had committed a crime as required by ORS 131.615(1). The trial court held that the initial encounter was not a stop. We agree.

■ There are three kinds of encounters between police and citizens: arrests, stops and mere conversation. *State v. Warner,* 284 Or 147, 161, 585 P2d 681 (1978). A stop occurs when a police officer restrains a person's liberty by physical force or a show of authority. *State v. Kennedy,* 290 Or 493, 498, 624 P2d 99 (1981). A person is "restrained" when, in view of

all the circumstances, a reasonable person would have believed that he or she was not free to leave. *State v. Horton,* 86 Or App 199, 202, 738 P2d 609 (1987).

■■    The initial contact between Beckwith and defendant was not a stop. Beckwith did not park his car in a way that prevented defendant from leaving. The fact that the headlights and spotlight were on did not transform the encounter into a stop. *State v. Deptuch,* 95 Or App 54, 57, 767 P2d 471, *supplemented,* 96 Or App 228, 772 P2d 442 (1989). The request for a license also was not a sufficient show of authority to make it a stop. *State v. Jackson,* 91 Or App 425, 755 P2d 732, *rev den* 306 Or 661 (1988). By the time that Beckwith did restrain defendant from leaving, he had sufficient information to believe that defendant was driving under the influence of alcohol. The motion to suppress was properly denied.

■    After defendant had concluded his presentation of evidence, he moved to reopen his case. He argues that the trial court erred in denying his motion. The purpose of the motion was to permit testimony that he blew twice into the Intoxilyzer, which he contends would show that the machine was not working properly. The state opposed the motion because Beckwith, who had conducted that test, was not available to rebut the testimony.[1] The trial court held that the request was untimely and that, because the officer was not present, it would be unfair to the state to admit the evidence. The trial court did not abuse its discretion. The issue of the accuracy of the Intoxilyzer had not been raised before. In view of Beckwith's unavailability, the presentation of the evidence at that time in the trial would have unfairly prejudiced the state.

Affirmed.

---

[1] Beckwith testified on the first day of trial, but was not present on the second day. At the end of the first day, the prosecutor asked defendant's counsel if he planned to call Beckwith as a witness, and counsel said that he could not.