George Kenneth SCHENEKL, Appellant,

v.

The STATE of Texas.

No. 1529–99.

Court of Criminal Appeals of Texas.

Oct. 25, 2000.

---

**3.** Due to our disposition of this ground, we dismiss the state's remaining grounds for re-view.

Raymond G. Wheless, Plano, for appellant.

Yolanda M. Joosten, Asst. DA, Denton, Matthew Paul, State's Atty., Austin, for State.

### OPINION

KEASLER, J., delivered the opinion of the Court, in which McCORMICK, P.J., and MANSFIELD, KELLER, and WOMACK, JJ., joined.

While on midnight patrol on Lake Lewisville, Game Warden Patrick Canan saw George Schenekl's boat leaving Sneaky Pete's Marina. Canan stopped Schenekl for a routine water safety check. In order to perform a water safety check, state law provides that an officer may stop and board a boat without probable cause or reasonable suspicion. We must decide

---

**1.** *Schenekl v. State*, 996 S.W.2d 305, 311–12 (Tex.App.—Fort Worth 1999).

**2.** U.S. Const.Amend. IV.

whether this statute is constitutional. We conclude that it is.

### Factual and Procedural History

After being pulled over by Canan, Schenekl had trouble answering questions, fumbled with his fingers, and smelled like alcohol. Schenekl performed preliminary sobriety tests at Canan's request then voluntarily accompanied Canan to shore for more complete tests. Once on shore, Schenekl failed the field sobriety tests, and Canan arrested him for boating while intoxicated.

Schenekl moved to suppress the evidence against him, arguing that Canan stopped him illegally, in violation of the Fourth Amendment. The trial court denied the motion, and Schenekl then entered a negotiated plea of no contest.

On appeal, Schenekl contested the validity of the stop and argued that the statute authorizing random stops violated the Fourth Amendment. The Court of Appeals concluded the statute passed constitutional muster.[1] We granted discretionary review to consider this issue of first impression.

### Legal Background

The Fourth Amendment prohibits unreasonable searches and seizures .[2] The permissibility of a particular law enforcement practice is judged by balancing the intrusion on the individual's Fourth Amendment interests against the promotion of a legitimate governmental interest.[3] In balancing these competing considerations, we must ensure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions at the unfettered discretion of officers in the field.[4]

---

**3.** *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979).

**4.** *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979).

Schenekl and the State disagree about how to balance the competing interests. Citing *Brown v. Texas*,[5] Schenekl argues that in addition to balancing the State's interest against the individual's privacy expectation, we must also consider statistical data to determine the law enforcement procedure's effectiveness. Since the State did not introduce data in this case, Schenekl contends that the State has failed to prove the effectiveness of random stops and therefore the stop was illegal. The State responds that the effectiveness factor does not apply to random stops but only to cases involving fixed checkpoints.

Years before the Supreme Court decided *Brown*, it established the two-prong balancing test to be used in a Fourth Amendment analysis: a court should balance "the need to search against the invasion which the search entails."[6] More recently, the Court has restated the test as a balance of "the public interest [against] the individual's right to personal security free from arbitrary interference by law officers."[7] Subsequent cases have continued to apply this test.[8] In *Brown*, the Supreme Court repeated this analysis[9] and indicated that the test may involve the consideration of three factors: "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty."[10] We recognized these factors and applied them to sobriety checkpoints in *State v. Sanchez*[11] and *Holt v. State*.[12] Since *Brown*, however, the Supreme Court has articulated the balancing test as being merely two-pronged.[13]

▮ We believe that the proper balancing test is two-pronged, weighing the State's interest against the level of intrusion. The effectiveness of a given procedure, the advancement of the public interest, and the availability of alternative means are not separate prongs, but fall within the consideration of whether the action promotes a legitimate governmental interest. This test applies to both random stops[14] and checkpoints.[15]

**5.** *Ibid.*

**6.** *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 536–37, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967).

**7.** *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975).

**8.** *United States v. Martinez–Fuerte*, 428 U.S. 543, 555, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116 (1976) (court weighs "the public interest against the Fourth Amendment interest of the individual"); *Prouse*, 440 U.S. at 654, 99 S.Ct. at 1396 (balance "intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests").

**9.** *Brown*, 443 U.S. at 50, 99 S.Ct. at 2640 (balance "the public interest and the individual's right to personal security free from arbitrary interference by law officers").

**10.** *Id.* at 51, 99 S.Ct. at 2640.

**11.** 856 S.W.2d 166 (Tex.Crim.App.1993).

**12.** 887 S.W.2d 16 (Tex.Crim.App.1994).

**13.** *United States v. Villamonte–Marquez*, 462 U.S. 579, 588, 103 S.Ct. 2573, 2579, 77 L.Ed.2d 22 (1983) (balance the "intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests").

**14.** *See Prouse*, 440 U.S. at 658–59, 99 S.Ct. at 1398–99 (Court balances "intrusion ... against ... governmental interests"; Court considers availability of alternative methods); *Brown*, 443 U.S. at 51–53, 99 S.Ct. at 2640–41 (Court balances "public interest and the individual's right to personal security"; Court looks at degree to which the stop advances public interest); *Villamonte–Marquez*, 462 U.S. at 588–91, 103 S.Ct. at 2579–82 (Court balances "intrusion ... against ... governmental interests"; Court considers effectiveness by considering lack of reasonable alternatives).

**15.** *See Martinez–Fuerte*, 428 U.S. at 554, 96 S.Ct. at 3081 (Court balances "public interest against the Fourth Amendment interest"; Court considers statistics on effectiveness of checkpoint); *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 454–55, 110 S.Ct. 2481, 2487–88, 110 L.Ed.2d 412 (1990) (Court balances "State's interest" against "intrusion";

## Application

■ The statute at issue provides that "in order to enforce the provisions of this chapter, an enforcement officer may stop and board any vessel subject to this chapter and may inspect the boat to determine compliance with applicable provisions." [16] The chapter requires that boats carry a certificate of number,[17] the proper lights,[18] a whistle or bell,[19] life preservers,[20] fire extinguishers,[21] a flame arrestor,[22] ventilators,[23] a muffler,[24] and a rearview mirror.[25]

We first consider the State's interest that this statute promotes. The Legislature has provided guidance, stating that "[i]t is the duty of this state to promote recreational water safety for persons and property in and connected with the use of all recreational water facilities in the state, to promote safety in the operation and equipment of facilities, and to promote uniformity of laws relating to water safety." [26]

The Supreme Court has noted that a state has a "substantial interest in protecting the health and well-being of its citizens." [27] In considering this substantial interest, we consider the effectiveness of the statute at issue and whether any alternative means are available for enforcement of boating safety regulations.

Although this record presents no statistics concerning the effectiveness of random water safety checks, that is not determinative. In *Prouse,* the Supreme Court considered a random stop of a car to check the driver's license and registration. Although there were no statistics in the record showing the effectiveness of the procedure, the Court did not end its analysis there. It went on to consider the alternative methods available for accomplishing the State's goal. We will do the same.

In *Villamonte–Marquez,* the Supreme Court addressed the federal statute permitting random stops of seagoing vessels. The Court considered the lack of reasonable alternatives for determining if ships are in compliance with the law. Unlike cars, the Court explained, boats have no obvious stickers or license plates which can confirm that they are in compliance with the law.[28]

Additionally, the Court recognized that unlike cars on highways, boat checkpoints are impractical because there are no established avenues of transport on the water.[29] Schenekl argues that fixed checkpoints at docks or boating ramps would be practical, but we disagree. As the *Villamonte–Marquez* Court noted, checkpoints at ports would be easy to avoid.[30] The same holds true for lakes. Some boaters dock their boats at their homes rather than using public docks or boating ramps. If checkpoints were established only at public docks, lakeside residents would be forever immune from compliance with boating regulations. Even if checkpoints at docks were established, it would be an ineffective mechanism for enforcement, because a

Court considers statistics in record as indicating effectiveness of checkpoint).

16. Tex.Parks & Wild.Code Ann. § 31.124(a).

17. *Id.* at § 31.021, 31.028.

18. *Id.* at § 31.064.

19. *Id.* at § 31.065.

20. *Id.* at § 31.066.

21. *Id.* at § 31.067.

22. *Id.* at § 31.068.

23. *Id.* at § 31.069.

24. *Id.* at § 31.070.

25. *Id.* at § 31.071.

26. *Id.* at § 31.002.

27. *Farmer v. United Brotherhood of Carpenters,* 430 U.S. 290, 302–303, 97 S.Ct. 1056, 1064–65, 51 L.Ed.2d 338 (1977).

28. *Villamonte–Marquez,* 462 U.S. at 590, 103 S.Ct. at 2580.

29. *Id.* at 589, 103 S.Ct. at 2580.

30. *Ibid.*

boater could comply with regulations while at the dock but be in noncompliance out on the lake.

The State has a strong interest in protecting its citizens. Specifically, we find that the State has a high interest in promoting recreational water safety. That interest can be realistically promoted only through the means the Legislature has provided here-random water safety checks.

In contrast, the level of intrusion involved is minimal. The Supreme Court considered a random stop of an automobile in *Prouse* and held such a stop to be impermissible.[31] The Court reasoned that the intrusion was great because it involved an unsettling show of authority, interfered with freedom of movement, was inconvenient, consumed time, created anxiety, and was sporadic and random.[32] The Court noted that the State had alternative mechanisms available for ensuring that drivers carried a license and registration, including periodic renewal requirements and frequent stops for traffic violations.[33]

*Prouse* is distinguishable from our case in two important respects. First, as previously discussed, there are not effective alternative mechanisms available for enforcing boating regulations. Second, in *Prouse*, the Court noted that automobile travel is a basic, pervasive, often necessary means of transportation in our society.[34] As such, there is a heightened expectation of privacy while in a car as compared to a boat. Boating is not basic, pervasive, or generally necessary, as is motor vehicle transportation. It is more commonly associated with recreation than necessity.

We acknowledge, as the Supreme Court has, that random stops are more intrusive than checkpoints. With a checkpoint, there is little fear or surprise for law-abiding motorists.[35] The drivers can see that other drivers are being stopped, so less concern or fright is generated than with a random stop.[36] Since the location of checkpoints are generally determined by a ranking government official, the checkpoint involves little discretionary enforcement activity.[37] A random stop, on the other hand, involves an unsettling show of authority.[38] The fact that it is random and sporadic creates anxiety and allows for a grave danger of abuse of discretion by officers in the field.[39]

Nevertheless, as explained, checkpoints are not a practical alternative on the water. And while any show of authority can be unsettling and inconvenient, here the stop involves a brief inspection, not a full-blown search of the boat or driver.[40] We conclude the intrusion on the individual's Fourth Amendment rights is minimal.

Balancing the State's interest with the level of intrusion, we conclude, as did the Court of Appeals, that § 31.124 of the Texas Parks and Wildlife Code is constitutional.

### Judgment

We affirm the Court of Appeals' judgment.

MEYERS, J., delivered a concurring opinion, in which HOLLAND and JOHNSON, JJ., joined. PRICE, J., concurred.

**31.** *Prouse,* 440 U.S. at 663, 99 S.Ct. at 1401.

**32.** *Id.* at 657, 99 S.Ct. at 1398.

**33.** *Id.* at 658–60, 99 S.Ct. at 1398–99.

**34.** *Id.* at 662, 99 S.Ct. at 1400–01.

**35.** *Sitz,* 496 U.S. at 452–53, 110 S.Ct. at 2486–87.

**36.** *Martinez–Fuerte,* 428 U.S. at 558, 96 S.Ct. at 3083.

**37.** *Id.* at 559, 96 S.Ct. at 3083.

**38.** *Prouse,* 440 U.S. at 657, 99 S.Ct. at 1398.

**39.** *Id.* at 657–662, 99 S.Ct. at 1398–1400.

**40.** *See Villamonte–Marquez,* 462 U.S. at 592, 103 S.Ct. at 2581.

MEYERS, J., delivered this concurring opinion, joined by JOHNSON and HOLLAND, JJ.

It ought to be emphasized that the search authorized by the statute in question is narrow in scope and may not exceed its stated purpose, absent reasonable suspicion or probable cause. As stated by the Court of Appeals in this case:

> The enforcement provision authorizes detention *only for the purpose of ensuring compliance with the registration and safety requirements.* See TEX. PARKS & WILD.CODE ANN. § 31.124. The intrusion is minimal in scope because *the search may only be directed at the safety items listed in the statute.* Further, while the boat must carry several safety and registration items, *only a brief visual inspection is necessary to determine compliance.* Therefore, the scope and length of the seizure favor a finding that the intrusion is minimal.

*Schenekl v. State,* 996 S.W.2d 305, 310 (Tex.App.—Fort Worth 1999) (emphasis added). An officer conducting a random safety and regulatory compliance inspection under Chapter 31 could inspect the boat for the following items:

1. The vessel's certificate of number. TEX.PARKS & WILD.CODE ANN. § 31.028 (certificate of number shall be carried on board vessel);

2. Identification number and validation decal. *Id.* at § 31.032 (identification number and validation decal shall be painted on or attached to side of vessel near bow);

3. Manufacturer's identification number. *Id.* at § 31.043 (vessels manufactured in Texas for sale and vessels sold, numbered or titled in Texas shall carry manufacturer's hull identification number clearly imprinted on structure of vessel or displayed on plate permanently attached to vessel);

4. Lights. *Id.* at § 31.064;

5. Sound-producing devices. *Id.* at § 31.065;

6. Life preserving devices. *Id.* at § 31.066;

7. Fire extinguishers. *Id.* at § 31.067;

8. Flame arrester or backfire trap on carburetors of gasoline engines, with the exception of outboard motors. *Id.* at § 31.068;

9. Ventilators for bilges of engine and fuel tank compartments, with the exception of open boats. *Id.* at § 31.069;

10. Exhaust water manifold or muffler installed on engine. *Id.* at § 31.070; and

11. Rearview mirror (in certain circumstances where persons are being towed). *Id.* at § 31.071.

This is not an unwieldy list. An officer could determine compliance with all of these requirements by a visual inspection in a matter of minutes; a search of interior compartments on the boat would not generally be necessary.

I would note that *United States v. Villamonte–Marquez,* 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983), and other case law involving searches of boats by federal customs agents or Coast Guard, are concerned with vessels that have access to the open seas. This fact was one of the most weighty considerations in *Villamonte–Marquez.* While we are not concerned in this case with vessels that have access to the open sea, the search authorized by the statute here is nonetheless reasonable in view of its limited scope, the brevity in which such search can be conducted, the lack of alternative means for enforcement, and the public interest in ensuring compliance with the water safety regulations.

With these comments, I concur in the judgment of the Court.