Argued and submitted March 16, affirmed December 29, 2011, petition for review denied May 17, 2012 (352 Or 33)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DAYNA BRADLEY ARONSON,
*Defendant-Appellant.*

Washington County Circuit Court
D090661T; A143395

271 P3d 121

Ryan Scott argued the cause and filed the briefs for appellant.

Samuel A. Kubernick, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Ortega, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.*

ORTEGA, P. J.

---

* Wollheim, J., *vice* Rosenblum, S. J.

## ORTEGA, P. J.

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII). ORS 813.010. He assigns error to the trial court's denial of his motion to suppress evidence discovered as a result of what defendant contends was an illegal stop. Defendant argues that he was unlawfully stopped when a deputy parked his patrol car behind defendant's parked car and shined the patrol car's spotlight on the back of defendant's car. The state responds that, under the totality of the circumstances, the deputy did not stop or seize defendant. We agree with the state that defendant was not stopped under the circumstances presented here. Accordingly, we affirm.

In reviewing the trial court's denial of defendant's motion to suppress, we state the facts consistently with the trial court's express and implied findings. *See State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005) (a reviewing court is bound by the trial court's factual findings if there is supporting evidence in the record and, in the absence of express findings, presumes the trial court found the facts consistently with its ultimate conclusion).

At about 2:00 a.m., Deputy Majors saw defendant's car parked by itself in a shopping center parking lot. Majors observed defendant's car pull forward, hit the concrete curb at the front of the parking space, and then slowly back out. Defendant then drove out of the parking lot at about five miles per hour and pulled onto a side street. He proceeded at the same speed about half of a block to a stop sign, stopped, turned right, drove another quarter of a block, and then pulled back into the parking lot and returned to the same parking space that he had left a minute or two earlier. Defendant stopped within the parking space but at an angle and "a few feet" short of where a car would normally park. Majors stopped his patrol car at an angle behind defendant's car, leaving between one and a half and three car lengths between the two cars. The distance between the two cars would have allowed defendant to pull out of the parking space had he chosen to do so. Majors did not activate his emergency lights after stopping but, for officer safety reasons, turned on his spotlight. The deputy aimed the intense

light beam of the spotlight partially toward defendant's driver's side mirror and partially on the back of the car. Majors illuminated the car because he wanted to be able to see what defendant was doing in the car while Majors approached on foot. Furthermore, by shining the light toward the driver's side mirror, Majors hoped to make it more difficult for defendant to observe his approach. Majors walked up to defendant and spoke with him. He observed signs that defendant was impaired and testified that, within about 30 seconds of speaking to defendant, his investigation came to a point where defendant would not have been free to leave. Majors ultimately arrested defendant for DUII.

Before trial, defendant moved to suppress the evidence of his intoxication on the ground that Majors had seized him without reasonable suspicion. Defendant contended that, once Majors parked behind him and turned on the spotlight, he could not safely have left because he could not "see exactly where Deputy Majors['s] vehicle was parked" and a reasonable person would not have felt free to leave under those circumstances. The state, on the other hand, asserted that the officer had not engaged in a show of authority that would constitute a stop. The trial court observed that there was no evidence regarding whether or not the spotlight did, in fact, obscure defendant's view behind him and concluded that "the officer shining his spotlight for officer safety purposes, and parking the vehicle in [a manner] which the defendant would still have been able to leave did not significantly restrict the defendant's freedom or ability to move." It therefore denied defendant's motion to suppress.[1] Defendant was subsequently convicted of DUII following a trial on stipulated facts.

On appeal, as he did before the trial court, defendant asserts that he was stopped when the officer parked behind him and turned on the spotlight because the spotlight was directed at the driver's side mirror "so that the defendant [had] difficulty seeing behind him, and therefore [could not]

---

[1] In ruling on the motion, the trial court found that there was no evidence that Majors had probable cause or reasonable suspicion when he first contacted defendant. Thus, the court considered only whether the initial contact constituted a seizure. The state does not challenge the court's determination that Majors lacked probable cause or reasonable suspicion. Accordingly, we do not address that issue.

safely pull around the patrol vehicle[.]" According to defendant, no reasonable person would have felt free to leave under the circumstances. The state disagrees, emphasizing that the officer did not park his car in a way that prevented defendant from leaving and that we have held in earlier cases that police shining a spotlight on a vehicle does not transform an encounter into a stop.

Thus, the question we must resolve is whether the encounter in question was a stop. "There are three kinds of encounters between police and citizens: arrests, stops and mere conversation." *State v. Calhoun*, 101 Or App 622, 624, 792 P2d 1223 (1990). A stop involves a "temporary restraint on a person's liberty," *State v. Ashbaugh*, 349 Or 297, 308-09, 244 P3d 360 (2010), while "mere conversation" consists of a noncoercive encounter that is not a seizure, *id.* at 308. "The thing that distinguishes 'seizures' * * * from encounters that are 'mere conversation' is the imposition, either by physical force or through some 'show of authority,' of some restraint on the individual's liberty." *Id.* at 309 (quoting *State v. Rodgers/Kirkeby*, 347 Or 610, 621-22, 227 P3d 695 (2010)). As set forth in *Ashbaugh*, the pertinent test is as follows:

> "A 'seizure' of a person occurs under Article I, section 9, of the Oregon Constitution: (a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances *would* believe that (a) above has occurred."

349 Or at 316 (emphasis in original).

Here, there was no evidence that Majors's actions were intended to prevent defendant from leaving. Accordingly, we consider whether a reasonable person under the totality of the circumstances presented here would believe that his liberty or freedom of movement had been significantly restricted. With respect to that question, we note that the officer parked his patrol car a distance behind defendant's vehicle such that defendant was not physically blocked from backing out of the parking space. *Cf. State v. Hemenway*, 232 Or App 407, 412-13, 222 P3d 1103 (2009), *rev allowed*, 350 Or 532 (2011) (when an officer's vehicle is

parked in a manner that blocks a defendant's vehicle from being driven away, that is a relevant consideration in assessing whether a reasonable person would not feel free to leave under the circumstances). Furthermore, we have held that police shining a spotlight on a suspect's vehicle does not transform an encounter into a stop.

In *State v. Deptuch*, 95 Or App 54, 767 P2d 471, *adh'd to as modified on recons*, 96 Or App 228, 772 P2d 442 (1989), we considered whether officers' actions constituted a stop when, at approximately 11:40 p.m., having observed two vehicles rendezvous with their engines running and headlights turned off, the officers parked alongside those vehicles and turned a spotlight on the rear of one car and the front of the other. We concluded that the officers' actions in pulling up alongside the parked vehicles and shining a spotlight on them did not constitute a restraint of liberty or a show of police authority. With respect to the spotlight in particular, we observed that "[i]lluminating the area with a spotlight, as distinguished from activating flashers, was not a show of police authority." *Id.* at 57.

We again addressed that issue in *Calhoun*. In that case, we considered whether an officer's actions effected a stop when he parked his marked patrol car about 30 feet behind the defendant's vehicle with the patrol car's headlights and spotlight on and then approached the defendant's vehicle and made contact with the defendant. 101 Or App at 624. Analyzing whether a reasonable person would have believed that he or she was not free to leave under the circumstances, we concluded that the contact was not a stop. We explained that the officer "did not park his car in a way that prevented [the] defendant from leaving" and further stated that the "fact that the headlights and spotlight were on did not transform the encounter into a stop." *Id.* at 625; *see also State v. Bond*, 189 Or App 198, 204, 74 P3d 1132 (2003) (an officer's knocking on a defendant's window for a period of time in order to rouse him did not constitute an exercise of authority sufficient to cause a reasonable person to believe that he or she had been restrained).

Here, similarly, the officer did not park his car in a way that prevented defendant from leaving—there was

sufficient space between the patrol car and defendant's vehicle that defendant could have backed out of the parking space and driven away. Nonetheless, defendant contends that this case is not like *Calhoun* or *Deptuch* because here the officer stated that he intended to shine the spotlight on defendant's driver's side mirror to make it more difficult for defendant to watch as the officer approached. According to defendant, he was therefore restricted "from safely or legally driving away," and that "constituted a significant interference with [his] liberty." We agree that, like where an officer's vehicle physically blocks a suspect's vehicle from being driven away, where an officer shines a spotlight in a way that prevents the driver from safely driving away, that is a relevant consideration in assessing whether a reasonable person would believe that he or she was not free to leave under the circumstances. However, there is no evidence here that the spotlight prevented defendant from safely driving away. As the trial court observed, there is no evidence that the spotlight actually blocked defendant's view behind him.[2] The evidence is only that the officer parked the car between one and a half and three car lengths behind defendant and shone the spotlight on defendant's vehicle as he approached it. Whether or not a spotlight might, in some circumstances, be used in a way that would effectively block a defendant's exit, we cannot conclude that those circumstances are presented in this case. Thus, this case is like *Calhoun* and *Deptuch*, and we conclude that the officer's act of parking behind defendant's vehicle and shining a spotlight on it did not constitute a show of authority or restraint of defendant's liberty such that a reasonable person would not have felt free to leave. Accordingly, defendant was not stopped for purposes of Article I, section 9, and the trial court properly denied the motion to suppress.

Affirmed.

---

[2] Defendant does not argue that the state had the burden to prove that he *could* see well enough to back up safely and failed to do so or raise any other issues with respect to burden of proof. Accordingly, we do not consider any such issues.